IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN JURIC, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-22-0179 |
| USALCO, LLC, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff John Juric brings several claims against Defendants USALCO, LLC ("USALCO"), H.I.G. Capital, LLC ("HIG"), Peter Askew, Lawrence Askew, Jr., and Kenneth Gayer. (Am. Compl., ECF No. 47.)[1] Juric brings claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), the Maryland Wage Payment and Collection Law, and Maryland common law. (Id.)

Now pending before the Court is Defendants' Motion to Dismiss. (ECF No. 24.) The Motion is fully briefed and no hearing is required. See Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, the Court will grant the Motion to Dismiss as to the ERISA claims and will decline to exercise supplemental jurisdiction over the state law claims.

### I.    Factual Background

Juric was employed by USALCO as its Chief Financial Officer beginning in November 2014. (Am. Compl. at ¶ 28). Defendant USALCO is a Maryland corporation that engages in the

---

[1]    The parties filed both redacted and sealed versions of various documents due to certain confidentiality agreements signed by the parties. (See, e.g., Sealed Am. Compl., ECF No. 22; Redacted Am. Compl., ECF No. 47.) The Court cites to the redacted versions of the documents in its Memorandum and accompanying Order.

production, marketing, and distribution of aluminum salt chemicals. (*Id.* ¶¶ 9, 27.) Defendants Peter Askew and Lawrence Askew supervised Juric, and Defendant Kenneth Gayer was the Chief Executive Officer of USALCO and also supervised Juric. (*Id.* ¶¶ 11–13.) HIG is a Florida corporation that acquired an ownership interest in USALCO. (*Id.* ¶¶ 10, 61.)

Juric alleges that he identified and raised various legal and ethical issues relating to USALCO's operations throughout his employment. (*See e.g., id.* at ¶ 61.) He alleges that he was ultimately terminated in January 2021 in retaliation for raising these issues and that his compensation suffered as a result. (*See, e.g., id.* ¶¶ 99, 102, 148, 196.)

During Juric's tenure, HIG acquired an ownership interest in USALCO. (*Id.* ¶ 61.) In connection with that transaction:

> Mr. Juric was offered the option to invest in Project Aero Management Co-Invest, LLC (the "Co-Invest") and in exchange for his investment he received certain management equity units in the Co-Invest (the "Co-Invest Units"). Mr. Juric also received [redacted] Management Incentive Units in Project Aero Management LLC (the "Management Incentive Units") pursuant to the Project Aero Management, LLC Equity Incentive Plan [("Equity Incentive Plan")] and a grant agreement dated August 3, 2020 (the "Grant Agreement").

(*Id.* ¶ 180 n.3.) Juric alleges that "[t]he Equity Incentive Plan is an ERISA plan because it provides retirement income to employees and/or results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." (*Id.* ¶ 23.) Juric also alleges that "Defendants interfered with [his] rights under the Equity Incentive Plan by terminating [him] before his Management Incentive Units had vested and before an expected significant increase in value due to a contemplated merger with a private equity firm." (*Id.* ¶ 203.)

Juric also alleges that, even after his termination, he was a participant in the USALCO Group Health Benefit Plan ("Health Benefit Plan"), which he likewise alleges is an ERISA-regulated plan. (*Id.* ¶¶ 19, 22.) Juric alleges that, "[a]s a result of his Co-Invest ownership, [he]

2

was entitled to continued participation in the [Health Benefit Plan] which provided for health and dental coverage as a 'participant' even after [his] termination." (*Id.* ¶ 212.) He alleges that he was "never given notice of the benefits nor the benefit of that coverage, but was instead provided only with COBRA[2] information." (*Id.* ¶ 213.) Juric also alleges that, following his termination, he "requested the status of his coverage and plan documents for the [Health Benefit] Plan, including through a request in writing through counsel on June 14, 2021." (*Id.* ¶ 214.) He alleges that Defendants did not provide such documents or information. (*Id.* ¶ 215.)

Juric commenced this action on January 24, 2022 and filed an Amended Complaint on May 9, 2022. (Compl., ECF No. 1; Am. Compl.) Counts I through XI are Maryland common law and Maryland Wage Payment and Collection Law claims. (Am. Compl. ¶¶ 256–337.) Counts XII through XVII are ERISA claims against USALCO and HIG: a claim for benefits under ERISA § 502(a)(1)(b) (Count XII); breach of fiduciary duties (Count XIII); interference under ERISA § 510 (Count XIV); estoppel (Count XV); failure to provide plan documents in violation of ERISA § 502(c); and declaratory judgment (Count XVII). (*Id.* ¶¶ 338–78.)

## II.    *Legal Standard*

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

---

[2]     COBRA—the Consolidated Omnibus Budget Reconciliation Act—allows workers who lose their health benefits to choose to continue group health benefits provided by their group health plan for limited periods of time under certain circumstances, such as job loss.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.   Analysis

Counts XII through XVII of the Amended Complaint purport to state claims under ERISA. Juric fails to state a claim as to each of these Counts, and Defendants' Motion to Dismiss will be granted as to these claims. The remaining claims, Counts I through XI, are Maryland state law claims, over which the Court declines to exercise supplemental jurisdiction and which the Court will dismiss. Accordingly, the Amended Complaint will be dismissed in its entirety.

#### A.   Wrongful Denial of Benefits (Count XII)

Juric's first ERISA claim is a claim for benefits under ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B). (Am. Compl. ¶¶ 338–45.) Juric alleges that "[u]nder a modification of the [Health Benefit] Plan that was intended to allow the Askews to participate in the benefits of the [Health Benefit] Plan because of their status as unit holders, [Juric] understood that he would also be considered a participant following his termination." (*Id.* ¶ 341.) He alleges that he was entitled to such continued participation due to his "Co-Invest ownership." (*Id.* ¶ 212.) Thus, Juric alleges, he was "entitled to benefits under ERISA § 502(a)(1)(B)" and "was wrongfully denied full benefits under the [Health Benefit] Plan." (*Id.* ¶¶ 343–44.) He explains that he suffered damages, as he was required to pay for COBRA coverage despite his entitlement to coverage under the Health Benefit Plan. (*Id.* ¶ 345.) Under ERISA § 502(a)(1)(B), a participant in an ERISA plan[3]

---

[3]        The parties do not dispute that the Health Benefit Plan is an ERISA-regulated plan.

may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights for future benefits under the terms of a plan." This claim fails and will be dismissed.

Juric has provided no details about what benefits he was allegedly denied. He states only that he was "not provided with the benefits available under the [Health Benefit] Plan" and that he was "wrongfully denied full benefits under the [Health Benefit] Plan." (Am. Compl. ¶¶ 342, 344.) Despite Juric's argument that he has provided "detailed allegations[,]" (Opp'n to Mot. Dismiss at 30, ECF No. 36-1), it is not clear from the Amended Complaint what benefits Juric allegedly did not receive. For this reason alone, he has not adequately pleaded his claim for benefits.

More fundamentally, nothing in the governing Health Benefit Plan document[4] supports the contention that Juric was entitled to benefits after his termination. The Health Benefit Plan document provides that "[a]n eligible Employee is a person who is classified by the employer on both payroll and personnel records as an Employee who regularly works full-time 30 or more hours per week" (ECF No. 24-12 at 38) and that coverage will end "[t]he day of the month in which Your employment ends." (ECF No. 24-12 at 44.) Nothing in the Health Benefit Plan document

---

[4]     The Court may consider the Health Benefit Plan document in ruling on the instant Motion to Dismiss. "Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). A court "may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . .'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). Further, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. Pursuant to these principles, courts may consider ERISA plan documents in considering motions to dismiss. *See Clark v. BASF Corp.*, 142 F. App'x 659, 661 (4th Cir. 2005); *Hooker v. Tunnell Gov't Servs., Inc.*, 447 F. Supp. 3d 384, 391 (D. Md. 2020).

In this case, the Health Benefit Plan document provided by Defendants (Mot. Dismiss, Ex. I, ECF No. 24-12), which is the Summary Plan Description and Plan document, are integral to the Amended Complaint—indeed, Juric's ERISA claims largely rest on his entitlement to benefits under the Health Benefit Plan—and Juric does not dispute its authenticity. Accordingly, the Court will consider the Health Benefit Plan document in resolving the instant Motion.

provides for continued eligibility after termination. Rather, the Health Plan Document provides for exactly what Juric allegedly received after he was terminated: continued COBRA coverage. (*Id.* at 46 (providing for up to 18 months of COBRA coverage upon a qualifying event, including that "employment ends for any reason other than Your gross misconduct").)

Juric, however, argues that "[d]uring his employment[,] [he] learned that under a Plan modification that was intended to allow the Askews to participate in the Plan as unit holders, as a Co-Invest unit holder he would also be a participant following his termination, based on, among other things, written assurances" and that "[o]ne of these assurances was an email from USALCO's counsel[.]"[5] (Opp'n to Mot. Dismiss at 29.) These additional factual details regarding written assurances and an email from counsel appear nowhere in the Amended Complaint and "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

Further, setting aside that this detail appears for the first time in Juric's briefing on Defendants' Motion to Dismiss, these vague assertions of a modification contained in unspecified "written assurances" cannot supplement the unambiguous language in the Health Benefit Plan document. As the Fourth Circuit has explained:

> The statute requires that all ERISA plans be "established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), and that the written instrument describe the formal procedures by which the plan can be amended, *id.* § 1102(b)(3). Based upon this statutory scheme, any modification to a plan must be implemented in conformity with the formal amendment procedures and must be in writing. Oral or informal written modifications to a plan . . . are of no effect.

---

[5]   Juric explains that this email was "not attached because of source[.]" (Opp'n to Mot. Dismiss at 29 n.11.) It is not clear what this means and, in any event, Juric provides no details about the contents of this email.

*Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58–59 (4th Cir. 1992), as amended (July 17, 1992); *see also Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 857 (4th Cir. 1994) ("ERISA prohibits informal written or oral amendments of employee benefit plans"); *Biggers v. Wittek Indus., Inc.*, 4 F.3d 291, 295 (4th Cir. 1993) ("A written plan is critical to ERISA's goal that employees be informed about the benefits to which they are entitled. Oral or informal written amendments are inadequate to alter the written terms of a plan, as this practice would undermine certainty.").

Here, Juric has alleged—at most—that there was an informal written modification to the Health Benefit Plan that purportedly allowed him to retain health benefits post-termination. This is insufficient to override the plain terms of the plan and to sustain his claim for benefits. Accordingly, Count XII will be dismissed.[6]

### B. Breach of Fiduciary Duties (Count XIII)

Juric next alleges that USALCO and HIG breached their fiduciary duties. (Am. Compl. ¶¶ 346–54.) Without citing to any ERISA provision, Juric alleges that "USALCO and HIG breached their fiduciary duties to Mr. Juric by, among other things, wrongfully misrepresenting to [him] their intentions with respect to the [Health Benefit] Plan, in order to wrongfully deprive [him] of benefits under the Plan" and that "USALCO and HIG, plan fiduciaries, misled and were purposefully dishonest in their dealings with Mr. Juric, a plan participant, in an effort to save USALCO and HIG money." (*Id.* ¶¶ 349–50.) He again alleges that "[u]nder a modification of the [Health Benefit] Plan that was intended to allow the Askews to participate in the benefits of the [Health Benefit] Plan because of their status as unit holders, Mr. Juric understood that he would

---

[6]    Further, "[c]ourts in this Circuit have stated that an ERISA benefits action may be brought against the entity with decision-making authority and the benefit plan itself." *Lewis v. Aetna Life Ins. Co.*, Civ. No. CCB-19-860, 2020 WL 247461, at *3 (D. Md. Jan. 15, 2020). Only USALCO—not HIG—is identified in the Health Benefit Plan document as the Named Fiduciary and Plan Administrator, (ECF No. 24-12 at 6–7), and Juric has not alleged that HIG had any decision-making authority with respect to the Health Benefit Plan. Accordingly, this claim should be dismissed against HIG on this independent basis.

also be considered a participant following his termination." (*Id.* ¶ 352.) He alleges that "USALCO

and HIG made these representations in their capacities as [Health Benefit] Plan fiduciaries." (*Id.* ¶

349.) This claim fails, and Defendants' Motion to Dismiss will be granted as to Count XIII.

The Court interprets Juric's claim as one under ERISA § 502(a)(3), codified at 29 U.S.C.

§ 1132(a)(3). This provision authorizes a participant to bring an action for individual equitable

relief for breach of fiduciary obligations.[7] *See Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d

371, 384 (4th Cir. 2001) ("By this provision, Congress provided individual beneficiaries with an

avenue to seek equitable relief for a breach of fiduciary duty under ERISA.").

To the extent that Juric's claim is a reformulation of his unsuccessful claim for benefits,

ERISA does not permit such claims. As the Fourth Circuit has explained, "[i]ndividualized

equitable relief under § 1132(a)(3) is normally appropriate only for injuries that do not find

adequate redress in ERISA's other provisions." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101,

102 (4th Cir. 2006) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)). Where "adequate

relief is available for the plaintiff's injury through review of [his] individual benefits claim under

§ 1132(a)(1)(B), relief under § 1132(a)(3) will not lie." *Id.* at 102–03.[8] "[A] claim for breach of

fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an

---

[7]     Participants may also bring fiduciary duty claims under ERISA § 502(a)(2), codified at 29 U.S.C. §
1132(a)(2). *See David v. Alphin*, 704 F.3d 327, 332 (4th Cir. 2013) ("ERISA § 502(a)(2) . . . provides that a plan
participant may bring a civil action against fiduciaries for breaches of their duties of loyalty and prudence . . .").
However, litigants "cannot bring suit under § 502(a)(2) to recover personal damages for misconduct, but rather must
seek recovery on behalf of the plan." *David*, 704 F.3d at 332 (explaining that litigants "may bring suit under §
502(a)(2) on behalf of the Pension Plan, but they are not permitted to recover individually; all relief must go to the
Plan itself"). Juric does not seek recovery on the behalf of the Health Benefit Plan, and therefore § 502(a)(2) does not
apply.

[8]     Of course, "[t]he *Korotynska* court did not hold that bringing simultaneous claims for relief under Sections
502(a)(3) and 502(a)(1)(B) is *always* inappropriate." *England v. Marriott Int'l, Inc.*, 764 F. Supp. 2d 761, 779 (D.
Md. 2011). Rather, plaintiffs may bring both claims "to address two separate and distinct injuries that are based in
whole or in part on different facts." *Id.* (citations and quotations omitted).

interpretation and application of *an ERISA-regulated plan* rather than upon an interpretation and application of *ERISA*." *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999) (emphasis in original).

In this case, although Juric attempts to base his breach fiduciary duty claim on alleged misrepresentations by USALCO and HIG, both his breach of fiduciary duty claim and his claim for benefits seek to remedy the same injury: the allegedly wrongful denial of benefits. To the extent that his breach of fiduciary duty claim seeks to remedy the same injury as his claim for benefits, it fails. *See, e.g., Greenwell v. Grp. Health Plan for Emps. of Sensus USA, Inc.*, 505 F. Supp. 3d 594, 607 (E.D.N.C. 2020) (denying a breach of fiduciary duty claim where "[t]he injunctive relief and equitable accounting and disgorgement sought under § 1132(a)(3) seek to remedy the same injury that the § 1132(a)(1)(B) claim does: the wrongful denials of plaintiff and the putative class members' claims for coverage"); *Campbell v. Rite Aid Corp.*, Civ. No. 13-02638-BHH, 2014 WL 3868008, at *4 (D.S.C. Aug. 5, 2014) ("[W]here it is clear that a party has simply 'repackaged' a § 502(a)(1)(B) claim for the wrongful denial of benefits and placed a § 502(a)(3) bow on top, dismissal is warranted.").

Further, even if the Court were to find that the fiduciary duty claim is not merely a repackaging of the claim for benefits, the claim still fails. "In order to establish a claim for breach of fiduciary duty based on alleged misrepresentations, a plaintiff must show: 1) that a defendant was a fiduciary of the ERISA plan, 2) that a defendant breached its fiduciary responsibilities under the plan, and 3) that the participant is in need of injunctive or other appropriate equitable relief to remedy the violation or enforce the plan." *Adams v. Brink's Co.*, 261 F. App'x 583, 589–90 (4th Cir. 2008). "To prove the 'breach' element of this claim, a plaintiff must show that the defendant was acting in a fiduciary capacity when it made the representations, the information misrepresented was material, and the misrepresentation was relied upon to plaintiff's detriment."

9

*Damiano v. Inst. for In Vitro Scis.*, Civ. No. PX 16-0920, 2016 WL 7474535, at *4 (D. Md. Dec. 29, 2016).

As an initial matter, Juric does not adequately allege that USALCO or HIG were fiduciaries. "In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the] person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). An individual can become a plan fiduciary either "by being expressly identified in the plan documents . . . as having the authority to control and manage the operation and administration of the plan" or "by performing specified discretionary functions with respect to the plan's management, assets, or administration of a plan in a *de facto* capacity." *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434, 445 (D. Md. 2005). "[A] participant or beneficiary is generally not required to allege that the plan administrator and named fiduciary also satisfies the functional fiduciary test in order to state a plausible fiduciary breach claim against it under ERISA." *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 278 (4th Cir. 2019). However, even if a defendant is a named fiduciary, there can be "no liability for breach of fiduciary duty if the challenged conduct . . . is not fiduciary in nature." *Id.* 278 n.13.

With respect to HIG, Juric provides no allegations in support of his conclusory statement that HIG is a fiduciary. Juric does not allege that HIG is expressly identified in the Health Benefit Plan documents as a fiduciary—and indeed it is not—nor does he allege that HIG performed any discretionary functions with respect to the Health Benefit Plan such that it was a *de facto* fiduciary. This is insufficient to state a breach of fiduciary duty claim against HIG. *In re Mut. Funds Inv. Litig.*, Civ. No. CCB-04-0949, 2005 WL 3692756, at *8 (D. Md. Dec. 6, 2005) ("Fourth Circuit law . . . requires more than the mere recitation of statutory language in an ERISA fiduciary breach

10

case."). In addition, while USALCO is the named fiduciary of the Health Benefit Plan (ECF No. 24-12 at 7)—a fact Juric himself does not even allege—Juric provides no allegations that USALCO was acting as a fiduciary in making any alleged misrepresentations. *See Pegram*, 530 U.S. at 226 (explaining that "the threshold question" in assessing a breach of fiduciary duty claim is whether the person charged with the breach was performing a fiduciary responsibility *"when taking the action subject to the complaint"*) (emphasis added); *id.* at 225 ("ERISA does require, however, that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions."). Accordingly, Juric fails to adequately allege this threshold issue.

Moreover, the Amended Complaint is so devoid of factual allegations relating to the breach of fiduciary duty claim that it is not clear what the alleged misrepresentations were, who made them, or why Juric believes he was entitled to coverage post-termination. *See Jones v. Canal Wood, LLC*, Civ. No. 18-274-FL, 2019 WL 1370847, at *10 (E.D.N.C. Mar. 26, 2019) (explaining that "plaintiffs do not allege sufficient facts to support a claim of intentional misrepresentation" where plaintiffs "suggest that defendants misrepresented to them . . . that their 'benefits' would continue" but where "plaintiffs have not alleged in the complaint who made alleged misrepresentations to them, when they were made, nor the actual contents of the statements about 'benefits'").

Juric vaguely states—without elaboration—that USALCO and HIG "wrongfully misrepresent[ed] . . . their intentions with respect to the [Health Benefit] Plan" and that they were "purposefully dishonest in their dealings." (Am. Compl. ¶¶ 349–50.) However, Juric then goes on to state that there was a "modification of the Plan *that was intended to allow the Askews to participate in the benefits of the Plan* because of their status as unit holders" and that, under this modification, he "understood that he would also be considered a participant following his

11

termination." (Am. Compl. ¶ 352 (emphasis added.))  He does not allege that he was told that he too would be considered a participant as a result of *his* status as a unit holder.[9]  He also does not allege that HIG or USALCO informed him of this alleged modification, he only alleges that such modification existed.[10]   In short, the Amended Complaint contains no allegation of a misrepresentation (nor that any misrepresentation was made by HIG or USALCO).

Accordingly, for the foregoing reasons, Count XIII will be dismissed.

### C. Estoppel (Count XV)

In a related count, Juric alleges that "Defendants USALCO and HIG are estopped to deny Plaintiff's entitlement to benefits or sums equivalent to the current value of the promised benefit, as equitable relief under ERISA § 502(a)(3) and under the broad remedial purpose of ERISA." (Am. Compl. ¶ 367.)  Juric avers that he is entitled to such estoppel based on the above-described alleged misrepresentations regarding his continued post-termination coverage under the Health Benefit Plan.  (*Id.* ¶¶ 360–65.)

As explained above, Juric's § 502(a)(3) claim for breach of fiduciary duty does not survive Defendants' Motion to Dismiss, and this estoppel claim essentially seeks only to remedy that violation.  (*See* Am. Compl. ¶ 367 (seeking "equitable relief under ERISA § 502(a)(3)" in the form of estoppel); *id.* ¶ 364–65 (repeating allegations made in connection with his ERISA § 502(a)(3) claim).)  Therefore, "there simply is no ERISA violation on which [Juric] can hinge an entitlement

---

[9]      As noted above, in his briefing, Juric argues that "[d]uring his employment[,] [he] learned that under a Plan modification that was intended to allow the Askews to participate in the Plan as unit holders, as a Co-Invest unit holder he would also be a participant following his termination, based on, among other things, written assurances" and that "[o]ne of these assurances was an email from USALCO's counsel[.]" (Opp'n to Mot. Dismiss at 29.) These additional factual details regarding written assurances and an email from counsel appear nowhere in the Amended Complaint and the Court will not consider them. *See S. Walk*, 713 F.3d at 184.  Further, these additional facts still do not provide sufficient factual detail regarding what he was told, nor whether any of the persons with whom he communicated were acting as fiduciaries.

[10]     Juric also states that he asked HIG and USALCO if he was a Health Benefit Plan participant and that they reassured him that he was. (Am. Compl. ¶¶ 362–363.)  It is, of course, undisputed that he was a participant when he was employed.  What Juric fails to allege is that these reassurances related in any way to his post-termination coverage.

to [an] equitable remed[y,]" such as estoppel. *Moon v. BWX Techs., Inc.*, 577 F. App'x 224, 232 (4th Cir. 2014) (explaining that "because 29 U.S.C. § 1132(a)(3) authorizes appropriate equitable relief only to redress violations of ERISA or an ERISA plan . . . [the] threshold inquiry here is whether [a plaintiff] has sufficiently alleged such a violation"); *see also Ret. Comm. of DAK Americas LLC v. Brewer*, 867 F.3d 471, 485 (4th Cir. 2017) ("Based on the clear precedent from this Circuit and others, the doctrine of equitable estoppel cannot be used to require the payment of benefits that conflicts with the express, written terms of the Plan."). Accordingly, Juric's claim for estoppel fails and Count XV will be dismissed.

### D. *Interference (Count XIV)*

Juric also alleges that he was a "participant or beneficiary in an employee benefit plan, the Project Aero Management, LLC Equity Incentive Plan" and that "[t]he Equity Incentive Plan is an ERISA plan because it provides retirement income to employees and/or results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." (Am. Compl. ¶¶ 23, 356.) Juric alleges that "[i]n terminating [him] before his rights in the Management Incentive Units vested, despite knowledge of a coming significant increase in value, Defendants USALCO and HIG interfered with [his] ERISA rights under the Project Aero Management, LLC Equity Incentive Plan, in violation of ERISA, Section 510." (*Id.* ¶ 357.) This claim fails and Count XIV will be dismissed.

ERISA § 510, codified at 29 U.S.C. § 1140, prohibits, among other things, discharging a participant "for the purpose of interfering with the attainment of any right to which such participant may become entitled under" an employee benefit plan.

Juric fails to adequately plead that the Equity Incentive Plan is an employee benefit plan under ERISA. In support of his contention that the Equity Incentive Plan is regulated by ERISA,

13

Juric essentially only restates the statutory definition of an "employee pension benefit plan" without any factual detail to support his allegations. *Compare* 28 U.S.C. 1002(2)(A) (defining "employee pension benefit plan" as "any plan, fund, or program . . . established or maintained by an employer" that "(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond") *with* (Am. Compl. ¶ 23 (explaining that the Equity Incentive Plan is "an ERISA plan because it provides retirement income to employees and/or results in a deferral of income by employees for periods extending to the termination of covered employment or beyond").)

Other than this recitation of the statutory definition, the Amended Complaint contains no facts explaining the contours of the Equity Incentive Plan. This is insufficient to state a claim under ERISA. *See Coleman v. Provident Life & Acc. Ins. Co.*, Civ. No. CCB-10-1959, 2011 WL 1980541, at *3 (D. Md. May 20, 2011) (finding that plaintiff "failed to state a claim because he has provided no facts regarding the terms of the alleged pension plan in which he was allegedly a participant"); *Inman v. Klockner-Pentaplast of Am., Inc.*, 467 F. Supp. 2d 642, 649 (W.D. Va. 2006) ("[T]he Court cannot merely accept Plaintiff's conclusion that an ERISA plan exists and must examine the complaint closely to determine whether the allegations relating to the stock investment program actually allow the Court to infer than an ERISA plan exists."); *see also Saunders v. Capital One Bank (USA), N.A.*, Civ. No. PWG-18-3222, 2019 WL 2869655, at *4 (D. Md. July 3, 2019) (finding complaint that included a formulaic recitation of the statutory definition of "debt collector" without any other facts to support the assertion failed to state a claim under the

Fair Debt Collection Practices Act). The Court concludes that this claim should be dismissed on this basis.

Further, the only details relating to the Equity Incentive Plan are contained in exhibits provided by Defendants. The Court can consider such documents in resolving the Motion.[11] Those documents confirm that this claim should be dismissed, as the Equity Incentive Plan is not an ERISA-regulated plan.

To qualify as an "employee pension benefit plan" under 28 U.S.C. § 1002(2)(A), courts routinely find that the purpose of the plan must be to provide retirement income or to defer income until termination or beyond, and that the fact that some income can be or may be deferred under the plan is insufficient to sustain an ERISA claim. *See Depew v. MNC Fin., Inc.*, 819 F. Supp. 492, 495 (D. Md. 1993) (finding that plans did not qualify as employee pension plans under ERISA where the plans did not "require[ ] deferral of income until the termination of [plaintiff's] employment or thereafter"); *see also Rich v. Shrader*, 823 F.3d 1205, 1210 (9th Cir. 2016) ("[W]e agree with our sister circuits that have determined that the paramount consideration is whether the primary purpose of the plan is to provide deferred compensation or other retirement benefits."); *id.* at 1211 ("[T]he mere possibility that income *can* be deferred does not mandate ERISA coverage."); *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir. 1980) ("The words 'provides retirement income' patently refer only to plans designed for the purpose of paying retirement income whether as a result of their express terms or surrounding circumstances."); *Oatway v. Am.*

---

[11] As with the Health Benefit Plan document discussed above, the Court may consider the documents relating to the Equity Incentive Plan. The Equity Incentive Plan Grant Agreement and related documents were expressly incorporated into Juric's Amended Complaint (Am. Compl. ¶ 180 n.3), are integral to his claims, and their authenticity is not disputed. *See Goines*, 822 F.3d at 166.

15

*Int'l Grp., Inc.*, 325 F.3d 184, 188–89 (3d Cir. 2003) (holding a plan was not an ERISA plan "because its purpose was to operate as an incentive and bonus program, and not as a means to defer compensation or provide retirement benefits"); *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 931–34 (8th Cir. 1999) ("Though the [plan's] vesting requirement could result in the deferral of a portion of any earned incentive until a participant's termination or retirement, . . . such a deferral would only occur by happenstance.  In fact, the stated purpose of the vesting requirement reinforces our conclusion that the [plan] is a non-ERISA bonus plan.").

The terms of the Equity Incentive Plan reflect that the incentive units could vest only during an employee's tenure, (ECF No. 24-8 at 5–6), that all unvested units would be forfeited upon an employee's termination and that the vested units could be repurchased, (*id.* at 6–7), and that all vested and unvested units would be forfeited upon an employee's for cause termination.  (*Id.* at 7.) Further, distributions under the Equity Incentive Plan were not tied to an employee's tenure.  (*Id.* at 6–7.)  Thus, while the documents reflect that the Equity Incentive Plan could potentially result in post-termination income, this is not sufficient to bring the plan within ERISA's regulatory scheme.  *See, e.g., Inman v. Klockner-Pentaplast of Am., Inc.*, 467 F. Supp. 2d 642, 651 (W.D. Va. 2006) (finding that a plan was not covered by ERISA where "although it is possible that Plaintiff could see income from his stock investment after the time he retired, that fact alone does not render the [relevant plan] an ERISA plan"); *Hagel v. United Land Co.*, 759 F. Supp. 1199, 1202 (E.D. Va. 1991) (rejecting plaintiff's argument that bonuses he received, which were paid out in five annual installments, constituted an ERISA pension plan merely because "*some portion*" of his income could "happen[ ] to become due" after plaintiff resigned).

The two cases Juric cites for the proposition that the Equity Incentive Plan is an ERISA plan are inapposite.  In *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir. 1980), the Fifth

16

Circuit found that a plan was not regulated by ERISA, concluding that "the mere fact that some payments under a plan may be made after an employee has retired or left the company does not result in ERISA coverage." Accordingly, that case stands for a proposition the opposite that Juric attempts to argue. In *Tolbert v. RBC Cap. Markets Corp.*, 758 F.3d 619, 626 (5th Cir. 2014), "[t]he 'express terms' of the [plan] . . . contemplate[d]": "employees deferring income 'to the termination of covered employment or beyond'"; that "upon separation, unvested amounts vest immediately"; and that an employee could elect to have a distribution upon separation. Not so here, where the express terms of the plan do not contemplate employees deferring income until after termination, there is no option for the employee to elect to have a distribution at termination, and unvested units are to be forfeited at termination (and all units are to be forfeited if the termination was for cause).

Further, Juric argues that, because the Equity Incentive Plan "creates an ongoing administrative scheme or practice[,]" it is an ERISA plan. (Opp'n to Mot. Dismiss at 32–33.) This fact alone is insufficient to turn the Equity Incentive Plan into a plan regulated by ERISA. *See Forte v. BNP Paribas*, Civ. No. 14-8556-JPO, 2015 WL 3604317, at \*4 n.7 (S.D.N.Y. June 8, 2015) ("That a plan creates an 'ongoing administrative scheme or practice,' while necessary to render it an ERISA plan, is not sufficient.").

For the foregoing reasons, the Court will also dismiss Count XIV.

### E. Failure to Provide Plan Documents (Count XVI)

Juric next argues that USALCO and HIG failed to provide plan documents associated with the Health Benefit Plan in violation of ERISA. (Am. Compl. ¶¶ 368–73.) Juric cites to ERISA § 502(c), codified at 29 U.S.C. § 1132(c). This provision provides the penalties for a violation of, *inter alia*, ERISA § 104(b)(4), codified at 29 U.S.C. § 1024(b)(4). The Court will also dismiss this claim, as Juric is not a "participant" for purposes of such a claim.

17

ERISA § 104(b)(4) provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

To bring a claim under ERISA § 104(b)(4), an individual must be a participant or beneficiary. As is relevant here,[12] 29 U.S.C. § 1002(7) defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . ." The Supreme Court has explained that "Congress did not say that all 'claimants' could receive information about benefit plans. To say that a 'participant' is any person who claims to be one begs the question of who is a 'participant' and renders the definition set forth in § 1002(7) superfluous." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989). Accordingly, there are four categories of "participants" that may request documentation under ERISA § 104(b)(4): "(1) employees in currently-covered employment; (2) former employees reasonably expected to return to covered employment; (3) former employees with colorable claims that they will prevail in suits for benefits; and (4) former employees with colorable claims that they will fulfill eligibility requirements in the future." *Davis v. Featherstone*, 97 F.3d 734, 737 (4th Cir. 1996) (citing *Firestone*, 489 U.S. at 117). "A claim is colorable if it is arguable and nonfrivolous, whether or not it would succeed on the merits." *Featherstone*, 97 F.3d at 737–38.

---

[12]  With respect to this claim, Juric alleges that he was a participant and does not allege that he was a beneficiary. (Am. Compl. ¶¶ 212, 369.) Although at times Juric claims that he was "a participant or beneficiary," (*id.* ¶¶ 339, 347), this language in the Amended Complaint appears to be boilerplate. Further, the term "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). There are no allegations in the Amended Complaint that indicate that Juric was a beneficiary rather than a participant.

Juric has not plausibly alleged that he falls into any of these categories. He plainly does not fall into the first, second, or fourth categories: he makes no allegations that he is an employee in currently-covered employment, that he expects to return to covered employment, or that he will fulfill eligibility requirements in the future. (*See generally* Am. Compl.)

He also does not fall into the third category, because he is not a participant under the plain terms of the Health Benefit Plan. As such, he does not present a colorable claim that he will prevail in a suit for benefits. Courts regularly find that plaintiffs do not have colorable claims for benefits where the plaintiff is simply not eligible for benefits under the terms of the relevant ERISA-regulated plan. *See, e.g., Keleher v. Dominion Insulation, Inc.*, 976 F.2d 726 (Table) (4th Cir. 1992) (finding that the appellant was not a participant where "[t]he status of the appellant's employment . . . indicates that based on the provisions of the plan, he did not and does not have a colorable claim for coverage. The appellant is simply not a member of the class of employees eligible for coverage under the plan . . . pursuant to the unambiguous language of the plan . . ."); *Clark v. E.I. Dupont De Nemours & Co.*, 105 F.3d 646 (Table) (4th Cir. 1997) (affirming the district court's dismissal of plaintiff's claim under § 104(b)(4) where he "did not have a colorable claim for benefits under the Plans" because "under no circumstances could [he] be considered a 'participant' under the Plans");[13] *Carpenter v. Carroll, Pinto, Inc.*, 374 F. Supp. 2d 487, 494 (E.D. Va. 2005) (explaining that plaintiff was no longer a beneficiary of the plan and would not become one in the future and, thus, that "[t]here is no arguable scenario whereby plaintiff would receive

---

[13]     Juric cites this case for the proposition that "although plaintiff did not have standing to bring a claim for benefits, he may have a claim if he was denied plan documents." (Opp'n to Mot. Dismiss at 34.) This misstates the case, and Juric leaves out key portions of the opinion. The court in *Clark* explained that "[a]lthough [the plaintiff] does not have standing to bring a claim against [the defendant] for benefits under the Plans, he may have a viable claim for non-disclosure statutory damages *if he was erroneously denied Plan documents*." *Clark*, 105 F.3d at *4 (emphasis added). The court went on to conclude that he was *not* erroneously denied Plan documents because he did not have a colorable claim to benefits, as he "had knowledge that he had not been a DuPont employee since 1970. Furthermore, under no circumstances could Clark be considered a 'participant' under the Plans." *Id.* at *5.

benefits under the [plan], and she therefore lacks standing to pursue her ERISA claim"), *aff'd,* 170 F. App'x 280 (4th Cir. 2006); *Cole v. Champion Enterprises, Inc.*, Civ. No. 05-00415, 2005 WL 8167130, at *12 (M.D.N.C. Nov. 1, 2005) ("[Plaintiff] does not qualify as a plan 'participant' because he is not eligible to receive benefits from either [plan]."). On the other hand, courts find that a plaintiff has a colorable claim for benefits where the plaintiff could satisfy some eligibility requirement under the relevant plan. *See, e.g., Featherstone*, 97 F.3d at 738 (finding that plaintiff had a colorable claim because the plaintiff "met the first two requirements to be eligible for benefits under the plan" and "although a final determination had not been reached, it was apparent that he might satisfy the third eligibility requirement because he had suffered an injury on the job which had rendered him unfit for service").

Because by the plain language of the Health Benefit Plan Juric's status as a participant ended when he was terminated, as discussed above, he simply does not have a colorable claim for benefits. In short, "Congress did not say that all 'claimants' could receive information about benefit plans[,]" *Firestone*, 489 U.S. at 117, and "[a]bsent more than an honest but unsupportable claim of eligibility, [a plaintiff] cannot properly be considered a plan participant" for purposes of ERISA § 104(b)(4). *See Keleher*, 976 F.2d at *4.

Accordingly, the Court will dismiss Count XVI of the Amended Complaint.

### F. Declaratory Judgment (Count XVII)

Juric's final ERISA claim seeks declaratory judgment "to promptly and definitively resolve the Parties' controversy regarding his claims brought pursuant to ERISA." (Am. Compl. ¶ 378.)

As discussed above, Juric has failed to allege any ERISA violations. Accordingly, Count XVII will be dismissed.

### G.  Supplemental Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. (Am. Compl. ¶ 3.)[14]  Under 28 U.S.C. § 1331, federal courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." As discussed above, the only federal law claims in this case are the ERISA claims, which the Court now dismisses. Thus, the only claims remaining are Maryland common law and Maryland Wage Payment and Collection Law claims.

Under 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." The Fourth Circuit has explained that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In deciding whether to exercise supplemental jurisdiction, courts consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.*

---

[14]  Juric alleges that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over the 28 U.S.C. § 1367. (Am. Compl. ¶¶ 3, 5.) Juric does not argue that diversity jurisdiction exists in this case, and indeed it does not. For diversity jurisdiction to exist, 28 U.S.C. § 1332 "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). Here, as Juric alleges, both Juric and HIG are citizens of Florida. (Am. Compl. ¶¶ 8, 10.) Accordingly, complete diversity does not exist for purposes of diversity jurisdiction.

The Court finds that dismissal of the state law claims is appropriate here, given the relatively minor role the ERISA claims play in the Amended Complaint and the early stage of the litigation. *See Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001) ("[W]hen all federal claims are dismissed early in the litigation, the justifications behind pendent jurisdiction . . . are typically absent.").

## IV.    *Conclusion*

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 24) to the extent that it seeks dismissal of Juric's ERISA claims.  Because it declines to exercise supplemental jurisdiction over the remaining state law claims, the Court will dismiss those claims without prejudice to refiling in state court.

DATED this  Ƶ  day of March, 2023.

BY THE COURT:

James K. Bredar
Chief Judge